"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title ***does not discharge*** an individual debtor from ***any debt*** - for money, property, services, or an extension, renewal, or refinancing of credit, to the extent ***obtained by - (A) false pretenses, a false representation, or actual fraud***, other than a statement respecting the debtor's or an insider's financial condition; (B) use of a statement in writing - (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive..."

The law is clear that obligations to pay money incurred via fraud, including check fraud/theft by deception, are not subject to discharge under the U.S. Bankruptcy Code. Defendants' conduct here did not violate the U.S. Bankruptcy Code. This argument advanced by the FTC is as equally unpersuasive in demonstrating that Defendants committed any infraction of the FDCPA.

The undocumented declarations by the seventeen individuals identified above does not demonstrate the existence of any plan, policy or scheme by Defendants to contact individuals who had checks dishonored for reasons other than non-sufficient funds or closed accounts. These few contacts cited by the FTC are excellent evidence that the policies and procedures employed by Defendants to preclude such contacts were effective. For the periods in question, restitution was sought by Defendants on more than 3,400,000 dishonored checks. With all of Defendants' paper and electronic records at their disposal they have 17 complaints. Even if all 17 individuals referenced above were contacted in error, it would indicate a less than .000005 error rate.

III. ABSENCE OF "FRAUD EXCEPTION" IN FDCPA DOES NOT MEAN FDCPA APPLIES TO CRIMINAL ACTS OF THEFT AND FRAUD. THIRD CIRCUIT HAS CLEARLY ESTABLISHED IN THIS CIRCUIT THAT ACTS OF THEFT AND FRAUD ARE NOT SUBJECT TO THE PROVISIONS OF THE FDCPA. FTC'S POSITION THAT FDCPA APPLIES TO SHOPLIFTING, CABLE PIRACY, COUNTERFEITING, PRICE TAG SWITCHING, NON-SUFFICIENT FUND CHECKS AND CHECKS WRITTEN ON CLOSED ACCOUNTS IS AT ODDS WITH FDCAP STATUTORY LANGUAGE AND THIRD CIRCUIT CASE LAW.

The FTC argues in their Opposition that even if the bad check writers committed check fraud the FDCPA still applies to Defendants because there is no "fraud exception" in the FDCPA. The FTC's reference here to the absence of a "fraud exception" in the FDCPA is lifted from the flawed judicial reasoning in <u>Bass v. Stolper, Koritzinsky, Brewster & Neider</u>, 111 F.3d 1322 (7th Cir. 1997) where the Seventh Circuit indicated that it was reluctant to judicially create a "fraud exception" that was not in the statutory language of the FDCPA. <u>Bass</u> at 1329.

It is not necessary, indeed, it is not the practice, for Congress to list all the things which are excepted from the legislation they enact. For example, there is no "tax exception" set forth in the FDCPA, yet every court that has reviewed the statute has found that taxes are not "debts" as defined by the FDCPA. There is no "child support exception" set forth in the FDCPA, yet no court has held that child support payments are "debts" under the FDCPA. There is no "tort exception" set forth in the FDCPA, but there is no language in any case that suggests that the "debt" definition in the FDCPA applies to tort settlements. There is no "fraud or theft exception" in the FDCPA, yet the courts which have examined those specific topics (theft of cable signals and shoplifting) have held that the restitution amounts owed resulting from their criminal conduct are not "debts" under the FDCPA. It is true that some courts have differed from the Third Circuit Court of Appeals' holdings in <u>Zimmerman</u> and <u>Pollice</u>. Some courts,

including the Bass[4] Court have concluded that NSF checks, even if crimes of fraud, are subject to the provisions of the FDCPA. Though there are different holdings in other circuits, there is no doubt that the decisions in Zimmerman and Pollice in this circuit do not afford FDCPA protections to those who commit crimes of theft and fraud, or to tort recovery actions. In it's 29 July 2003 Order Denying Hutchins' Motion to Dismiss the Court emphasized that "case law has made clear that persons who steal or commit fraud to attain goods or services are not consumers. . . " (Opinion, pp. 15-16). Proving that the check writers are consumers is a task that the Court assigned to the FTC. (Opinion, p.16). In the Court's July 29, 2003 Opinion, it indicated that the "plaintiff need not, at this [Motion to Dismiss] juncture, provide evidence to support a finding that the check writers did not commit theft." (Opinion, p.16). Now, for this Summary Judgment Motion, is clearly the time the Court had in mind for the FTC to demonstrate that the check writers did not commit theft.

The FTC has not, in its Opposition, or in its own Motion for Summary Judgment, made the argument that a NSF check or a check written on a closed account is not a crime of theft or fraud, or that the check writers did not commit theft. It knows it is a crime, but argues the FDCPA still applies. In discovery, the FTC revealed its intention to expand FDCPA protections to a whole range of crimes. The FTC asserted that shoplifters are covered by the FDCPA (See Exhibit 3 to Hutchins' SJ Motion, page 16-17, and Exhibit 4 to Hutchins' SJ Motion, pages 6-7), that price tag switchers are covered by the FDCPA (See Exhibit 4 to Hutchins' SJ Motion,

---

[4] A significant distinguishing factor in the Bass case was that the Defendants had argued that all dishonored checks were exempt from the provisions of the FDCPA because they sought recovery for all types of dishonored checks. By contrast, Defendants in this case only seek restitution for checks returned for non-sufficient funds, and for checks written on closed accounts… and then only after 30 days when every states' criminal code has been implicated and after presumptions of knowledge of insufficient funds and intent to commit check fraud/theft by deception have attached.

9

page 7), and that counterfeiters are covered by the FDCPA (See Exhibit 3 to Hutchins' SJ Motion, page 16-17, and Exhibit 4 to Hutchins' SJ Motion, page 8). The FTC disagrees with Zimmerman, and believes those who commit cable signal piracy are covered by the provisions of the FDCPA (See Exhibit 4, page 9, to Hutchins' SJ Brief").

It is evident that the FTC's interpretation of the FDCPA, that numerous crimes of theft and fraud, falls far outside the boundaries that most courts have accepted. The FTC is asking this court to disregard the Third Circuit's holdings in Zimmerman and Pollice and to fling itself head-first down the slippery slope of judicial expansion of the applications of the FDCPA. The law of this circuit, however, is clear, and if the FTC wants to change the law in this circuit, it should have to bear the burden and expense of going forward with an appeal to the Third Circuit or to the U.S. Supreme Court.

## SUMMARY

Defendants have conclusively demonstrated that every state has enacted laws criminalizing the failure to make restitution for non-sufficient fund checks and for checks written on closed accounts within a statutory period. (See Hutchins' SJ Motion, Exhibit 2). The longest period of time to make restitution before the attachment of criminal sanctions is thirty days. Every state has also enacted criminal presumptions of knowledge of insufficient funds and intent to commit check fraud/theft by deception that attach once the statutory period for restitution has expired. (See Hutchins' SJ Motion, Exhibit 2).

The controlling law in this circuit is that obligations to pay money arising out of crimes of theft and fraud are not subject to the provisions of the FDCPA. Defendants have conclusively demonstrated that the only dishonored checks that they purchased, and then sought restitution

10

for, were checks dishonored for non-sufficient funds and checks written on closed accounts. These are dishonored checks that are presumptively crimes in all 50 states if restitution is not made within 30 days. Defendants did not purchase, or seek restitution for, dishonored checks where payment had been stopped, or that were post-dated, or that had been identified as stolen. Defendants created and effectively implemented a series of policies to identify checks that were sold to Defendants in error. Checks sold to Defendants that had been dishonored for some reason other than non-sufficient funds or closed account checks were, upon identification, closed out.

Conversely, The FTC contends that numerous crimes <u>are</u> covered by the FDCPA including shoplifting (See Exhibit 3 to Hutchins' SJ Motion, page 16-17, and Exhibit 4 to Hutchins' SJ Motion, pages 6-7), price tag switchers (See Exhibit 4 to Hutchins' SJ Motion, page 7), counterfeiters (See Exhibit 3 to Hutchins' SJ Motion, page 16-17, and Exhibit 4 to Hutchins' SJ Motion, page 8), and cable signal pirates (See Exhibit 4, page 9, to Hutchins' SJ Brief") where the FTC states that <u>Zimmerman</u> was decided wrong by the Third Circuit Court of Appeals.

The controlling civil law in this circuit, also from <u>Zimmerman</u>, is that efforts to recover tort settlements are not subject to the provisions of the FDCPA. Defendants have conclusively demonstrated that a NSF check and a check written on a closed account is a civil tort of misrepresentation. No state has provided a civil remedy for check fraud in contract, in equity, or in any legal doctrine other than in tort. In discovery, the FTC was unable to identify any state that had provided a civil remedy for check fraud in anything other than tort. The FTC knows of no state that had provided a remedy for dishonored checks via breach of contract or in equity.

11

(See Exhibit 3 to Hutchins' SJ Motion, pages 14-15). It is uncontested by the FTC that a dishonored check is a civil tort of misrepresentation.

The FTC's own Opinion Letter to James R. Palmer, Esq., dated August 27, 1992, citing to the FTC's "Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act," 53 Fed. Reg. 50,097 (1988), clearly states that an FDCPA "debt" "does not include tort claims "because they are not debts incurred from a [transaction] (involving purchase of) property . . . or services . . . for personal, family or household purposes." He went on to say that civil claims against shoplifters are not FDCPA debts. (See Hutchins' Opp to FTC SJ Motion, Exhibit 6). The FTC has responded in discovery that there is no difference between a shoplifter, counterfeiter, or bad check writer. (See Exhibit 3 to Hutchins' SJ Brief, page 16). Accordingly, Defendants' efforts to recover restitution from the tortfeasor is not subject to the provisions of the FDCPA . . . not according to the Court in Zimmerman . . . and not according to the FTC's own Opinion Letter referenced above.

The Defendants have also shown that the "absence of a fraud exception in the FDCPA" is flawed legal reasoning, and that numerous legal obligations to pay money are not subject to the provisions of the FDCPA. For example, no "tax exception" in FDCPA, but still taxes are not FDCPA "debts," no "child support exception" in FDCPA, but child support is not FDCPA "debt," no "tort exception" in FDCPA, but torts are not FDCPA "debts."

Defendants have shown that bad check writers are not FDCPA consumers. As discussed above, every state legislature has defined the conduct of the bad check writer, who has not made restitution within a statutory period, as presumptively criminal with reference to a dishonored check. It is axiomatic that if conduct is criminal… it cannot simultaneously be the conduct of a consumer. By extrapolation, if the conduct is criminal, it cannot result in a civil FDCPA "debt."

12

A FDCPA consumer can be defined as an individual who, through a consensual transaction, purchases (with cash, credit cards, debit cards, checks, barter, or the promise of future payment – credit) money, goods, services or insurance from a vendor or merchant for personal use. A consumer is not a thief, is not a shoplifter, is not an armed robber, is not a counterfeiter, is not a burglar, is not a con-artist, is not a bad check writer. Accordingly, a transaction between an individual and a vendor or merchant that involves force, coercion, deceit, misrepresentation or fraud cannot be a FDCPA "transaction." And, because bad check writers are not FDCPA or FTC "consumers," there cannot have been any injury to commerce.

The FTC, on the other hand, has not shown that the bad checks were not crimes. The FTC has not shown that the bad checks were not torts. The FTC has not rebutted the presumptions of knowledge and intent that attached once each state's criminal code was implicated. The FTC has not shown any pattern or policy by Defendants to collect on checks dishonored for reasons other than non-sufficient funds and closed account checks. The FTC has not distinguished the cable signal piracy in Zimmerman from NSF checks and checks written on closed accounts. The FTC has not shown an absence of policies designed to preclude contacts with innocent consumers whose checks were dishonored for other than criminal reasons. The FTC has not shown that bad check writers are consumers. The FTC has admitted that torts are not FDCPA debts. The FTC has stated that shoplifting, price sticker switchers, counterfeiting, and cable signal piracy are subject to the provisions of the FDCPA.

## CONCLUSION

For all the reasons stated above, the Court should grant summary judgment in favor of all Defendants.

Dated this 24th day of January 2005, at Baghdad, Iraq.

Charles T. Hutchins
Defendant – Appearing Pro Se

14

CHARLES T. HUTCHINS
Senior Subcontracts Administrator
USMI/KBRCentral
APO   AE   09316
E-Mail: Charles.Hutchins@Halliburton.com
NJ Bar No. 02658-1997

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | Civil Action No. 03-2115 (JWB) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CHECK INVESTORS, INC., CHECK ) | |
| ENFORCEMENT, INC., JAREDCO, INC., ) | |
| BARRY SUSSMAN, ELISABETH ) | |
| SUSSMAN, and CHARLES HUTCHINS, ) | |
| ) | |
| Defendants. ) | |

**CERTIFICATION OF SERVICE**

I hereby certify that on January 24, 2005, a true copy of Defendant Charles T. Hutchins' Reply to FTC's Opposition to Motion for Summary Judgment was served via regular mail and e-mail on the following:

Stephen R. LaCheen, Esq.
31st Floor Lewis Tower Building
15th and Locust Streets
Philadelphia, PA 19102

Gregory A. Ashe, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, NW
Room NJ-2122
Washington, D.C. 20580

_____
CHARLES T. HUTCHINS
Defendant, Appearing Pro Se
