**CHARLES T. HUTCHINS**
Senior Subcontracts Administrator
USMI/KBRCentral
APO  AE  09316
e-mail: charles.hutchins@halliburton.com

January 24, 2005

Clerk
U.S. District Court
50 Walnut Street
Newark, New Jersey 07101

    Re:  FTC v Check Investors, et al.,  Civil No. 03-2115

Dear Sir or Madam:

    Attached please find a scanned copy of a signed original of my Reply to the FTC's Opposition to my Motion for Summary Judgment.

    Thank you for your assistance in this matter.

Very truly yours,

*[signature]*

Charles T. Hutchins

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | Civil Action No. 03-2115 (JWB) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CHECK INVESTORS, INC., CHECK ) | |
| ENFORCEMENT, INC., JAREDCO, INC., ) | |
| BARRY SUSSMAN, ELISABETH ) | |
| SUSSMAN, and CHARLES HUTCHINS, ) | |
| ) | |
| Defendants. ) | |

## REPLY TO FTC OPPOSITION TO HUTCHINS' MOTION FOR SUMMARY JUDGMENT

CHARLES T. HUTCHINS
Senior Subcontracts Administrator
USMI/KBRCentral
APO   AE   09316
E-Mail: Charles.Hutchins@Halliburton.com
NJ Bar No. 02658-1997

## TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                                                     ii

INTRODUCTION                                                                                              01

I.  STANDARDS FOR DECISIONS IN DISMISSAL AND SUMMARY
JUDGMENT MOTIONS ARE SUBSTANTIALLY DIFFERENT; DENIAL
OF A HUTCHINS' MOTION TO DISMISS WAS NOT DISPOSITIVE
REGARDING ANY SUBSTANTIAL ISSUE; SAME LEGAL ARGUMENTS
RAISED IN SUMMARY JUDGMENT MOTION DOES NOT CONSTITUTE
A RELITIGATION OF ISSUES PREVIOUSLY DECIDED                                                              02

II.  DEFENDANTS DID NOT ENGAGE IN COLLECION ACTIONS
AGAINST INDIVIDUALS WHO DID NOT WRITE NSF CHECKS OR
CHECKS WRITTEN ON CLOSED ACCOUNTS, AND DID NOT VIOLATE
U.S. BANKRUPTCY CODE                                                                                     04

III.  ABSENCE OF "FRAUD EXCEPTION" IN FDCPA DOES NOT
MEAN FDCPA APPLIES TO CRIMINAL ACTS OF THEFT AND FRAUD.
THIRD CIRCUIT HAS CLEARLY ESTABLISHED IN THIS CIRCUIT
THAT ACTS OF THEFT AND FRAUD ARE NOT SUBJECT TO THE
PROVISIONS OF THE FDCPA. FTC'S POSITION THAT FDCPA APPLIES
TO SHOPLIFTING, CABLE PIRACY, COUNTERFEITING, PRICE TAG
SWITCHING, NON-SUFFICIENT FUND CHECKS AND CHECKS WRITTEN
ON CLOSED ACCOUNTS IS AT ODDS WITH FDCAP STATUTORY
LANGUAGE AND THIRD CIRCUIT CASE LAW                                                                      08

SUMMARY                                                                                                   10

CONCLUSION                                                                                                14

# TABLE OF AUTHORITIES

**Table of Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)     03

Bass v. Stolper, Koritzinsky, Brewster & Neider, 111 F.3d 1322 (7th Cir. 1997)     08, 09

Pollice v. National Tax Funding, 225 F.3d 379 (3d Cir. 2000)     passim

Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2001)     03

Sutton v. United Airlines, Inc., 427 U.S. 471, 475 (1999)     03

Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3rd Cir. 1987)     passim

**Statutes**

Fair Debt Collection Practices Act     passim

11 U.S.C. § 523(a)(2)     06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>CHECK INVESTORS, INC., CHECK ENFORCEMENT, INC., JAREDCO, BARRY SUSSMAN, ELISABETH SUSSMAN, and CHARLES HUTCHINS,<br><br>  Defendants. | ) Civil Action No. 3-2115 (JWB)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) REPLY TO FTC OPPOSITION TO<br>) HUTCHINS' MOTION FOR<br>) SUMMARY JUDGMENT |

## INTRODUCTION

In their Opposition to Hutchins' Motion for Summary Judgment the FTC takes the position that the Court's July 30, 2003, Opinion, explaining its denial of Hutchins' Motion to Dismiss, constitutes a final resolution of all issues raised by Hutchins in his motion. The FTC goes on, in footnote 3, to suggest that Hutchins should be assessed with Rule 11 sanctions for raising the same issues in his Motion for Summary Judgment as was raised in his Motion to Dismiss. The FTC continued its arguments that there is no "fraud exception" in the FDCPA, and that other Courts have held that NSF checks are FDCPA debts. The FTC contends that the Defendants, in addition to contacting individuals that wrote NSF checks and checks written on closed accounts, also contacted individuals who stopped payment on their checks, who were involved in disputes with the merchant, who paid the merchant, and who filed bankruptcy. Lastly, the FTC argues that whether individuals wrote checks with the intention that the check be dishonored is immaterial to whether the Defendants violated the FDCPA and the FTCA.

I. **STANDARDS FOR DECISIONS IN DISMISSAL AND SUMMARY JUDGMENT MOTIONS ARE SUBSTANTIALLY DIFFERENT; DENIAL OF A HUTCHINS' MOTION TO DISMISS WAS NOT DISPOSITIVE REGARDING ANY SUBSTANTIAL ISSUE; SAME LEGAL ARGUMENTS RAISED IN SUMMARY JUDGMENT MOTION DOES NOT CONSTITUTE A RELITIGATION OF ISSUES PREVIOUSLY DECIDED.**

On July 29, 2003, this Court denied Charles Hutchins' ("Hutchins") Motion to Dismiss the Federal Trade Commission's ("FTC") Complaint. The Court, in its Order, stated "[m]any of the arguments propounded by defendant Hutchins cannot be properly considered at this juncture because they require fact-finding not appropriate in determining whether a plaintiff has stated claims upon which relief can be granted." (Opinion, p.14). The issues the Court identified that remained to be decided included: (1) whether individuals who issue dishonored checks and do not make restitution, are consumers, (2) whether amounts owed by bad checks writers are debts, (3) whether all the check writers from whom National Check Control ("NCC") collects payments purposely wrote checks on accounts with insufficient funds or on closed accounts with the intent to steal the merchandise or services they received, (4) whether the check writers did or did not commit theft, (5) whether NCC and Hutchins are FDCPA debt collectors, and (6) whether issuance of a dishonored check is a FDCPA covered transaction.

The Court did hold that amounts owed, when individuals issue dishonored checks, are covered under provision of the FDCPA, but the Court did not say that if the individual failed to make restitution within the period established by state statutes, and state criminal statutes are violated, and criminal presumptions of knowledge of insufficient funds and intent to commit check fraud or theft by deception attach… that the bad check writer and the dishonored check continued to be covered by provisions of the FDCPA. Since the FDCPA does not apply to criminal acts, FDCPA protections are lost the moment criminal statutes are implicated and

2

criminal presumptions of knowledge and intent attach. These are not determinations made by the Defendants, but rather criminal statutes and presumptions[1] of knowledge and intent enacted by sovereign state legislatures.

This Court's July 30, 2003 Order Denying Hutchins' Motion to Dismiss, despite the FTC's misrepresentations,[2] was not dispositive of all legal issues, and is not controlling for Hutchins' Motion for Summary Judgment. With Hutchins' Motion to Dismiss, the FTC benefited from the standard used by the Court that ". . . all allegations set forth by a plaintiff must be taken as true and all reasonable factual inferences drawn in his or her favor." Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2001) (citing Sutton v. United Airlines, Inc., 427 U.S. 471, 475 (1999).  As previously stated the Court acknowledged that Hutchins had 'many arguments' that it could not consider at the Motion to Dismiss stage. The Court was clearly not rejecting these 'many arguments' as the FTC contends, but found that it was premature to consider them prior to discovery.

The standard for granting a summary judgment motion, as the FTC knows full well, provides that a motion for summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P 56(c). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Under this standard the FTC gets no 'benefit-of-the-doubt' consideration, and must now prove its case. The law in this

---

[1] These presumptions shift the burden of proof from the state to the check writer and requires that he or she come forward with evidence to rebut the presumption of knowledge and intent. Requiring that the FTC come forward with evidence to rebut these presumptions of criminal intent would not, as the FTC suggests, turn jurisprudence on its head, but would place the evidentiary burden where the state legislatures placed it.
[2] That the Court "unequivocally rejected Hutchins' arguments" (FTC Opp. Br., p.3), "found without merit Hutchins' argument" (FTC Opp. Br., p.4), and "considered and rejected Hutchins' argument," (FTC Opp. Br., p.6).

3

jurisdiction, as set down by the Third Circuit Court of Appeals in <u>Zimmerman v. HBO Affiliates</u>, 834 F.2d 1163, 1169 (3rd Cir. 1987) and <u>Pollice v. National Tax Funding</u>, 225 F.3d 379, 401 (3d Cir. 2000), is that crimes of theft and fraud, and civil torts are not subject to the provisions of the FDCPA. To demonstrate that Hutchins is not entitled to judgment as a matter of law, the FTC first needs to show the NSF checks and checks written on closed accounts are not criminal acts of theft and fraud, and are not civil torts of misrepresentation.

Since the Court's Opinion clearly states that Hutchins has 'many arguments' that it did not rule on, and since the standards for deciding a motion to dismiss are substantially different that those relied upon to decide motions for summary judgment, it cannot be reasonably argued that Hutchins is attempting to re-litigate issues previously decided. The FTC's arguments that Hutchins be sanctioned for making good faith legal arguments on issues not resolved are frivolous, made in bad faith, and a waste of the Court's time.

## II. DEFENDANTS DID NOT ENGAGE IN COLLECION ACTIONS AGAINST INDIVIDUALS WHO DID NOT WRITE NSF CHECKS OR CHECKS WRITTEN ON CLOSED ACCOUNTS, AND DID NOT VIOLATE U.S. BANKRUPTCY CODE.

The FTC attempts to suggest that there was some conscious effort or policy by Defendants to engage in collections efforts against individuals that had checks dishonored for reasons other than non-sufficient funds or that the account was closed. For instance, the FTC references (1) declarations by four individuals who stated that their checks had been stolen, (2) one declaration by an individual who stated that a stop-payment order had been placed on the check, (3) declarations by two individuals who stated that they had a dispute with the merchant, (4) one declaration by an individual who stated that they had paid the merchant for the NSF check, (5) declarations by two individuals who stated that they were told by the merchant that

4

they had not written a NSF check, and (6) declarations by seven individuals who stated that they did not believe they had written an NSF check, but were later contacted by NCC. Unable to make a legal argument that NSF checks are not crimes of theft and fraud or civil torts of misrepresentation, the FTC's case has come down to these 17 declarations.

The Defendants only negotiated for the purchase of checks returned for non-sufficient funds, and checks written on closed accounts. On occasion the Defendants discovered that a few checks it was sold did not meet the check purchase parameters and contact was made with an individual that said they did not write the check. When an individual stated that their checks were stolen, or that payment of the check was stopped, or that the dishonored check had been paid, NCC closed out the matter upon the receipt of (1) a police report re: stolen checks, or (2) an affidavit from the bank indicating that the signature on check did not match the signature card, or (3) court documents reflecting a criminal prosecution against another for theft of this person's checks, or (4) an affidavit from the individual that they did not write the dishonored check, or (5) a phone call, fax or e-mail from a criminal investigator regarding the theft of that person's checks, or (6) bank records showing a "stop-payment" order, or (7) proof of payment.[3]

---

[3] Many check guarantee companies automatically receive dishonored checks written to their merchant clients. The check guarantee company pays the merchant the face value of the check and sends a notice to the bad check writer to make restitution. Because the merchant was automatically paid by the check guarantee company when a check was dishonored - many merchants were unaware that a particular check had been dishonored and they erroneously told the individual their check was not dishonored. Many bad check writers refuse to pay the check guarantee company (now the legal owner of the negotiable instrument). Instead, some will make restitution to the merchant (who has now been paid twice for the check). Legally, the check has not been paid by the bad check writer, and the records of the check guarantee company reflect that. The bad check writer, who failed to pay the lawful owner of the negotiable instrument, could be later contacted by NCC. Once proof of payment was received NCC closed the file.

The FTC, in addition to not attaching these declarations to their Opposition, also declined to attach the history of contacts between NCC and the check writer. The FTC has NCC's entire computer database of contacts with check writers. It also has all the recorded conversations between NCC account representatives and the check writers. Why they chose not to include these records and recordings for these seventeen individuals is for them to explain to the Court. Did any of the above-referenced individuals refuse to provide any of the documents referenced? Did they respond to these document requests with admissions that they did write the check, or with threats of violence, or with profanity? All these responses were received by NCC account representatives on a daily basis above. Hutchins periodically reviewed the history of contacts and conversation recordings with NCC managers to investigate complaints, and noted numerous instances of these responses from check writers when some form of documentation was requested. Very few bad check writers admit they wrote a dishonored check. That a person who committed theft by deception would also lie or sign a false declaration to avoid making restitution should not surprise anyone.

The FTC, unable to show that bad checks are not crimes, and unable to show that bad checks are not civil torts of misrepresentation, also suggests inappropriate conduct by Defendants toward bad check writers who filed bankruptcy. The inappropriate conduct complained of was a statement in a letter to a bad check writer that "the bankruptcy laws do not permit you to discharge criminal liability for fraudulent checks in bankruptcy proceedings." Inexplicably, and hardly a demonstration of candor to this tribunal, the FTC failed to explain to the court how this statement contrasted with Section 523(a)(2) of the U.S. Bankruptcy Code which provides, in pertinent part:

"A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title ***does not discharge*** an individual debtor from ***any debt*** - for money, property, services, or an extension, renewal, or refinancing of credit, to the extent ***obtained by - (A) false pretenses, a false representation, or actual fraud***, other than a statement respecting the debtor's or an insider's financial condition; (B) use of a statement in writing - (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive…"

The law is clear that obligations to pay money incurred via fraud, including check fraud/theft by deception, are not subject to discharge under the U.S. Bankruptcy Code. Defendants' conduct here did not violate the U.S. Bankruptcy Code. This argument advanced by the FTC is as equally unpersuasive in demonstrating that Defendants committed any infraction of the FDCPA.

The undocumented declarations by the seventeen individuals identified above does not demonstrate the existence of any plan, policy or scheme by Defendants to contact individuals who had checks dishonored for reasons other than non-sufficient funds or closed accounts. These few contacts cited by the FTC are excellent evidence that the policies and procedures employed by Defendants to preclude such contacts were effective. For the periods in question, restitution was sought by Defendants on more than 3,400,000 dishonored checks. With all of Defendants' paper and electronic records at their disposal they have 17 complaints. Even if all 17 individuals referenced above were contacted in error, it would indicate a less than .000005 error rate.