NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL TRADE COMMISSION, : | |
| Plaintiff, : | |
| v. : | |
| CHECK ENFORCEMENT; : | Civil Action No.  03-2115(JWB) |
| JAREDCO, INC.; | |
| BARRY S. SUSSMAN; : | |
| ELISABETH M. SUSSMAN; and | **O P I N I O N** |
| CHARLES T. HUTCHINS, : | |
| Defendants. : | |

**APPEARANCES**:

JOHN D. GRAUBERT
Acting General Counsel
Federal Trade Commission
By:  Gregory A. Ashe, Esquire
     Seena D. Gressin, Esquire
     Jamie E. Hine, Esquire
600 Pennsylvania Avenue
Washington, D.C.  20580

- and -

CHRISTOPHER J. CHRISTIE
United States Attorney
By:  Susan J. Steele
     Assistant United States Attorney
Federal Building
970 Broad Street
Newark, New Jersey  07102
(Attorneys for plaintiff
Federal Trade Commission)

STEPHEN R. LaCHEEN & ASSOCIATES
By:  Stephen R. LaCheen, Esquire
3100 Lewis Tower Building
225 South 15th Street
Philadelphia, Pennsylvania  19102
(Attorney for Defendants
Check Investors, Inc.; Check Enforcement;
Jaredco, Inc.; Barry S. Sussman
and Elisabeth M. Sussman)

CHARLES T. HUTCHINS, <u>pro</u> <u>se</u>
Senior Subcontracts Administrator
USMI/KBRCentral
APO AE 09316
E-Mail:  <u>Charles.Hutchins@Halliburton.com</u>

**BISSELL**, <u>Chief Judge</u>

This matter is before the Court on cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56(c), by plaintiff Federal Trade Commission and defendant Charles T. Hutchins.  The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1345, and 15 U.S.C. §§ 45(a), 53(b) and 1692.

<u>**FACTS**</u>

**I.  Parties**

Plaintiff, the Federal Trade Commission ("FTC"), is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41 <u>et</u> <u>seq</u>.  The FTC is charged with, <u>inter alia</u>, enforcement of Section 5(a) of the Federal Trade Commission Act ("FTCA"), which prohibits unfair and/or deceptive acts or practices affecting commerce, and the Fair Debt Collection practices Act ("FDCPA"), 15 U.S.C. § 1692 <u>et</u> <u>seq</u>., which prohibits unfair and/or deceptive debt collection practices.  The

FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTCA and the FDCPA, and to secure such equitable relief as may be appropriate in each case, including consumer redress.  15 U.S.C. §§ 53(b) and 1692(a).  (Compl., ¶ 4).

Defendant Check Investors, Inc. ("Check Investors"), d/b/a National Check Control, is a New Jersey corporation with its principal place of business at 55 Hartz Way, Suite 202, Secaucus, New Jersey.  Defendant Check Investors transacts or has transacted business in New Jersey. (Id., ¶ 5).

Defendant Check Enforcement, Inc. ("Check Enforcement"), d/b/a Goldman Check Systems, is a New Jersey corporation with its principal place of business at 55 Hartz Way, Secaucus, New Jersey.  Its principal place of business previously was Harmon Cove Tower One, Suite AL-13, Secaucus, New Jersey, and its previous corporate name was "Check Enforcement is Not a Collection Agency, Inc."  Defendant Check Enforcement transacts or has transacted business in New Jersey.  (Id., ¶ 6).

Defendant Jaredco, Inc. ("Jaredco"), d/b/a Goldman & Co., is a New Jersey corporation.  At all times material to the claims in plaintiff's Complaint, Jaredco maintained its principal place of business at Harmon Cove Tower One, Suite AL-13, Secaucus, New Jersey.  Defendant Jaredco transacts or has transacted business in New Jersey.  (Id., ¶ 7).

Defendant Barry S. Sussman ("Sussman") is or has been Vice President and Director of defendant Check Investors, and the President of defendant Jaredco and Check Enforcement.  He resides at 340 Slocum Way, Fort Lee, New Jersey.  His principal place of business is now 55 Hartz Way, Suite 202, Secaucus, New Jersey. his principal place of business previously was Harmon Cove Tower One, Suite AL-13, Secaucus, New Jersey.  Plaintiff alleges that at all times material to the claims in the Complaint, acting alone or in concert with others, defendant Sussman formulated, directed, controlled, or participated in the acts and practices of corporate defendants Check Investors, Check Enforcement, and Jaredco, including the acts and practices set forth in plaintiff's Complaint.  Defendant Sussman transacts or has transacted business in New Jersey.  (Id., ¶ 8).

Defendant Elisabeth Sussman, a/k/a Elisabeth Rabin (Rabin"), is the wife of defendant Sussman and is or has been the Vice President and sole Director of Jaredco.  She resides at 340 Slocum Way, Fort Lee, New Jersey.  Claims against her in this action have been settled and dismissed.  Plaintiff alleged that at all times material to the claims in the complaint, acting alone or in concert with others, defendant Rabin formulated, directed, controlled, or participated in the acts and practices of corporate defendants Check Investors, Check Enforcement, and Jaredco, including the acts and practices set forth in

-4-

plaintiff's Complaint.  Defendant Rabin transacts or has transacted business in New Jersey.  (<u>Id</u>., ¶ 9).

Defendant Charles T. Hutchins is an attorney and member of the New Jersey Bar.  He resides at 5011 Marshall Road, Farmindale, New Jersey.  Defendant Hutchins is or has been general counsel to corporate defendant Check Investors, Check Enforcement, and Jaredco.  Plaintiff alleges that defendant Hutchins' principal place of business is 55 Hartz Way, Suite 202, Secaucus, New Jersey.  His principal place of business previously was Harmon Cove Tower One,  Suite AL-13, Secaucus, New Jersey. Plaintiff further alleges that at all times material to the claims in the Complaint, acting along or in concert with others, defendant Hutchins formulated, directed, controlled, or participated in the acts and practices of corporate defendants Check Investors, Check Enforcement, and Jaredco, including the acts and practices set forth in Plaintiff's Complaint.  Defendant Hutchins transacts or has transacted business in New Jersey. (<u>Id</u>.  10).

## II.  Procedural History

The FTC filed its Complaint on May 12, 2003, alleging that Hutchins and defendants Check Investors, Inc., Check Enforcement, Inc. and Jaredco, Inc. (collectively "NCC") and corporate principal Barry Sussman violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 <u>et</u> <u>seq</u>. ("FDCPA"), and Section 5

of the FTC Act by falsely threatening consumers with arrest and criminal and civil prosecution to extract money from them that the consumers did not owe for checks returned by the financial institutions for non-sufficient funds ("NSF checks").

On May 19, 2003, after a hearing with notice to defendants on an order to show cause, this Court entered a temporary restraining order against defendants.  Sussman and the corporate defendants subsequently filed opposition to the FTC's application for a preliminary injunction, and Hutchins separately filed his motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  On July 30, 2003, the Court issued two opinions, one granting the FTC's motion for a preliminary injunction and the other denying Hutchins' motion to dismiss.

On September 5, 2003, Hutchins filed a counterclaim against the FTC alleging, among other things, that the FTC sought to expand the scope and meaning of the FDCPA beyond Congress' intent.  Hutchins, however, withdrew the counterclaim prior to oral argument.

On December 30, 2003, the FTC filed a motion for summary judgment against defendants and Hutchins filed a cross-motion for summary judgment, which was subsequently joined by all other co-defendants.

### III.  Background

The following facts have been set forth in this Court's

decision in <u>Federal Trade Commission v. Check Investors, Inc., et al.</u>, Civil Action No. 03-2115, slip op. at 6-11 (D.N.J. July 30, 2003) (granting plaintiff's motion for a preliminary injunction).

In its Complaint, plaintiff FTC alleges that the practices defendants employ in attempting to collect payments on NSF checks violate the FDCPA, 15 U.S.C. §§ 1692 <u>et seq.</u> (which sets forth a list of unlawful debt collection practices and provides for public enforcement of the FTC) and Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45 (which prohibits unfair or deceptive acts or practices in or affecting commerce).

Defendants initially operated their enterprise through Jaredco. (Plaintiff's Decl. 31, Exh. 5; Decl. 28, ¶ 21, Exh. 13). In August 2001, Big Lots Stores, Inc., a potential business affiliate, obtained a temporary restraining order against Jaredco, prohibiting it from collecting NSF checks from Big Lots' customers. <u>See</u> <u>Big Lots Stores, Inc. v. Jaredco, Inc.</u>, 182 F. Supp. 2d 644, 647 (S.D. Ohio 2002). After entry of the temporary restraining order, Sussman abandoned Jaredco and continued operating as Check Enforcement. (Plaintiff's Decl. 31, Exh. 5; Decl. 28, ¶ 21, Exh. 13). Plaintiff alleges that defendants continued to use Jaredco's trade name, Goldman & Co., to make collections. In around January 2002, Sussman abandoned Check Enforcement and continued operations as Check Investors, switching from the Goldman & Co. trade name to National Check

-7-

Control.  (Plaintiff's Decl. 31, Exh. 5; Decl. 28, ¶ 21, Exh. 13).  Plaintiff asserts that NCC's collection letters are nearly identical to those used by Goldman Check Systems and Goldman & Co.  (Plaintiff's Decl. 14, Exhs. 1, 4; Decl. 16, Exhs. 1, 3). Further, Jaredco, Check Enforcement, and Check Investors have many of the same employees.  (Plaintiff's Decl. 31, Exhs. 1, 2, 3; Decl. 28, ¶ 21, Exh. 13).

Defendant Check Investors purchases large amounts of NSF checks that were originally written to various merchants across the country.  In particular, Check Investors purchased over 2.2 million checks, worth an estimated $348 million in face value, from companies like Telecheck, Inc., Certegy, Inc. and Cross Check, Inc. (collectively "Telecheck").  (See Hutchins Decl., ¶ 5).  Telecheck guarantees checks and, if dishonored, pays to various merchants the amount of each check in full face value of the check so the merchant is relieved, in total from collecting on these checks.  In return the merchant assigns all rights, obligations, benefits, and responsibilities to Telecheck for payment.  (Id. at ¶ 6).

Telecheck attempts to recover on the NSF checks using its own internal methods and, if unsuccessful, will refer these NSF checks to a debt collector.  (Id., ¶ 8).  Defendants concede that these debt collectors are required to and do follow FDCPA procedures.  (Id.)  After six months to a year, if the debt

-8-

collector is unsuccessful, Telecheck will send the checks to a second debt collector who also follows FDCPA procedures. (Id.) These debt collectors work on a contingency basis and, if successful, receive one-third of the payment. (Id.)

If after another six months to a year, Telecheck's debt collectors are still unable to collect on these checks, Telecheck will sell the rights acquired from the original merchants on these NSF checks to defendant Check Investors. (Hutchins Decl., ¶ 10).

Plaintiff FTC alleges that for every purported NSF check, defendants demand immediate payment of a total sum that equals the face value of the NSF check plus an additional fee of either $125.00 or $130.00, depending on when defendants began collecting on the account. (See e.g., Plaintiff's Decl. 1, ¶ 6; Decl. 2, ¶ 2; Decl. 4, ¶ 8). However, the collection letters do not identify the face value of the NSF check and the additional charge but, rather, merely set forth the total "amount due." (See e.g., Plaintiff's Decl. 1, Exh. 2; Decl. 2, Exh. 2; Decl. 4. Exh. 1). Defendants do not even acknowledge that they are collecting additional charges. (See, e.g., Plaintiff's Decl. 3, ¶ 17; Decl. 8, ¶ 3; Decl. 9, ¶ 6).

To extract full payment, defendants threaten consumers with arrest, criminal prosecution and civil actions. (See, e.g., Plaintiff's Decl. 1, ¶¶ 6, 8; Decl. 3, ¶ 2; Decl. 5, ¶¶ 3, 8,

11).  Defendants make these threats through collections letters
and abusive and harassing telephone calls to the check writers
and their family members.  (See generally, Plaintiff's Decls. 1-
3, 5-17, 19, 21, 23).  Plaintiff asserts that, generally,
defendants assail consumers for six months or longer to collect
the full amount demanded.  Consumers who try to assert their
rights under the FDCA to dispute or obtain verification of their
purported debts are met with further abuse and threats.  (See
e.g., Plaintiff's Decl. 7, ¶¶ 13, 15; Decl. 2, ¶ 12; Decl. 3, ¶
11).  Plaintiff notes that a number of check writers from whom
defendants sought payment did not even owe the underlying NSF
check amount claimed by defendants.  (Plaintiff's Decl. 1, ¶¶ 2-
4; Decl. 2, ¶ 6; Decl. 3, ¶ 6; Decl. 16, ¶ 2).

Plaintiff asserts that since commencing operations in 1995,
defendants have collected at least $10.2 million from 42,100
consumers through practices that violate the FDCPA and Section 5
of the FTCA.  (Plaintiff's Decl. 28, ¶¶ 10, 12, Exh. 7).
Defendants have ignored cease and desist orders issued by at
least six states, (Plaintiff's Decl. 27, Exh. 8; Decl. 28, Exhs.
9-12; Decl. 30, Exh. 4), ignored or responded dismissively to law
enforcement and regulatory authorities in at least 28 states,
(Plaintiff's Decl. 27, ¶¶ 10-16, Exhs. 3-4, 14-41; Decl. 28, Exh.
9 at 2-6, 12-15, 20-21, Exh. 10 at 4; Decl. 30, ¶¶ Exh. 1 at 3-4,
Exh. 3 at 2; Decl. 32, ¶ 4), and defaulted on judgments obtained

by individual consumers whose suits have alleged abusive collection practices. (Plaintiff's Decl. 33, ¶¶ 4-5, Exh. 2). Defendants are not licensed as a collection agency in any state, yet collect payments in all 50 states, including states that bar collection by unlicensed agencies. (Plaintiff's Decl. 27, ¶ 25, Exhs. 10, 12, 14, 17, 18, 23, 27; Decl. 28, ¶¶ 30-31, Exhs. 9, 11, 12, 20; Decl. 29, Exh. 1 at 1; Decl. 30).

Plaintiff FTC alleges that the above-outlined practices violate numerous provisions of the FDCPA and the FTCA and requests that the Court grant summary judgment and issue a permanent injunction against defendants. Specifically, the FTC seeks a permanent injunction and order that: (1) prohibits defendants from engaging in debt collection activities; (2) prohibits defendants from making certain misrepresentations; (3) requires defendants to pay consumer redress; and (4) enables the FTC to monitor defendants' compliance with a final order. Defendants, however, request that the Court grant their motion for summary judgment against FTC and deny FTC's motion. In particular, defendants do not deny engaging in the practices described but rather assert that the NSF checks are not debts and that they are not debt collectors under the FDCPA; therefore, they are not subject to its requirements. Regarding plaintiff's FTCA claims, defendants contend that their practices are not deceptive and, therefore, do not violate the FTCA either.

## ANALYSIS

**I.   Standard of Law Applied to
      Motions for Summary Judgment
      Pursuant to Fed. R. Civ. P. 56**

Federal Rule of Civil Procedure 56(c) provides that summary
judgment should be granted "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also
Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.)
(en banc), cert. dismissed, 483 U.S. 1052 (1987).  In deciding a
motion for summary judgment, a court must view the facts in the
light most favorable to the nonmoving party and must resolve any
reasonable doubt as to the existence of a genuine issue of fact
against the moving party.  See Continental Ins. Co. v. Bodie, 682
F.2d 436, 438 (3d Cir. 1982).  The moving party has the burden of
establishing that there are no genuine issues of material fact. e
Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The Supreme Court has stated that, in applying the criteria
for granting summary judgment:

> [t]he judge must ask ... not whether ... the
> evidence unmistakably favors one side or the
> other but whether a fair-minded jury could
> return a verdict for the [non-moving party]
> on the evidence presented.  The mere
> existence of a scintilla of evidence in
> support of the [non-movant's] position will
> be insufficient; there must be evidence on

> which the jury could reasonably find for the
> [non-moving party].  The judge's inquiry,
> therefore, unavoidably asks whether
> reasonable jurors could find by a
> preponderance of the evidence that the [non-
> movant] is entitled to a verdict ....

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).  A

fact is "material" only if it will affect the outcome of a

lawsuit under the applicable law, and a dispute over a material

fact is "genuine" if the evidence is such that a reasonable fact

finder could return a verdict for the nonmoving party.  (<u>See</u>

<u>id</u>.)[1]

## II.  FTC's and Defendants' Respective Motions for Summary Judgment

Defendant Hutchins has not added any substantive factual

evidence to the record and reiterates legal arguments from his

previous motion to dismiss.  Defendant Hutchins does not deny

that he engaged in the above-outlined activity, but rather argues

that the bad check writers are not consumers entitled to the

protections of the FTCA because:

(1) a dishonored check is not an FDCPA debt;

(2) a dishonored check (for which restitution is not made) is a

civil tort (misrepresentation) which is not an FDCPA debt;

(3) a dishonored check (for which restitution is not made) is

---

[1]     As noted above, defendants do not contest the factual
assertions upon which the FTC predicates its claims.  Accordingly
there is no genuine issue of material fact that will impede
summary judgment here.

-13-

defined in all fifty states as a crime which is not an FDCPA debt;

(4) a bad check writer (who has not made restitution for an NSF check) is not a consumer;

(5) the issuance of an NSF check, in exchange for receipt of money, insurance, goods or services, is not a transaction as contemplated by the FDCPA;

(6) numerous state statutes provide bad check notification language (similar to Hutchins' demand letters) without FDCPA notices and disclaimers; and

(7) the Third Circuit has held that torts and thefts are not debts under the FDCPA.  (Hutchins Mem. at 7-35).

Hutchins acknowledges that this Court held that amounts owed, when individuals issue dishonored checks, are covered under the FDCPA.  However, Hutchins now contends that FDCPA protections are lost if individuals failed to make restitution of dishonored checks within the period established by state statutes, and state criminal statutes are violated.  Further, Hutchins argues that in such cases "presumptions of knowledge of insufficient funds or that an account is closed attach and/or presumptions that the check writer intended the check not to be paid attach, and/or presumptions that the check writer intended to commit check fraud or theft by deception attach." (Hutchins Mem. at 7).  Therefore, Hutchins contends, the FTC must demonstrate that:  dishonored

checks are not acts of theft or torts analogous to the theft of
cable signals; bad check writers are consumers; the checks for
which NCC and Hutchins sought restitution were not the product of
criminal conduct; the amounts owed were FDCPA debts; and issuance
of a dishonored check was an FDCPA transaction.

   A.  Defendants are "Debt Collectors"
       Collecting "Debts"

The FDCPA applies only to "debt collectors".  <u>Pollice v. National
Tax Funding, L.P.</u>, 225 F.3d 379, 403 (3d Cir. 2000).  Whether a
defendant is a "debt collector" as defined by the FDCPA is a
question of law appropriate for resolution on summary judgment.
(<u>See</u> <u>id</u>.)  The FDCPA's definition of "debt collector" excludes
"any person collecting or attempting to collect any debt owed or
due or asserted to be owed or due another to the extent such
activity ... (iii) concerns a debt which was not in default at
the time it was obtained by such person."  15 U.S.C. §
1692a(6)(F).  The <u>Pollice</u> court concluded that an assignee of a
debt is a "debt collector" under the FCDPA if the obligation was
already in default when it was assigned.  225 F.3d at 403.  This
Court noted in its previous decision that "the principal purpose
of NCC's business is the collection of defaulted obligations on
NSF checks it has acquired."  <u>Check Investors</u>, Civil Action No.
03-2115, slip op. at 24 (D.N.J. July 29, 2003) (denying
defendants' motion to dismiss).  The undisputed facts regarding
their conduct of business have established that defendants are

-15-

"debt collectors" as defined by the FDCPA, namely, "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act. Heintz v. Jenkins, 514 U.S. 291, 292 (1995). This Court has previously agreed with several circuit and district court holdings that "where one obtains goods in return for a dishonored check, a debt is created for the purposes of the FCDPA." Check Investors, Civil Action No. 03-2115, slip op. at 20 (D.N.J. July 29, 2003) (denying defendants' motion to dismiss). Defendants have not persuaded the Court that the debts at issue in this case are not covered by the FDCPA.

Rather, defendants contend that the dishonored checks for which they collected or sought to collect payment demonstrate crimes, and the bad check writers marked by defendants were criminals and tortfeasors. (Hutchins Opp. at 4, 7, 10, 13-15). Defendants provide the Court with their own formulated comparison between a consumer and a criminal as allegedly contemplated by the FTCA. (Id. at 8-10). However, their conclusions that the check writers are criminals or tortfeasors who enjoy no FTCA

-16-

protection, is unsupported in fact and law; they erect no bar to summary judgment for the plaintiff.

Relatedly, defendants' argument that the check writers are not consumers and, therefore, not protected by the FDCPA or the FTCA also does not support their motion for summary judgment. Defendants rely on the proposition that the check writers are analogous to counterfeiters or shoplifters who, because they commit theft, are not consumers. In its Complaint, plaintiff alleges that the check writers who NCC contacts are consumers under the FDCPA and the FTCA. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FTCA does not specifically define "consumer." While case law has made clear that persons who steal or commit fraud to attain goods or services are not consumers, there is simply no evidence before the Court that all the check writers from whom NCC collects payments purposely wrote checks on accounts with insufficient funds or on closed accounts with the intent to steal the merchandise or services they received. Accordingly, defendants' motion for summary judgment as to claims arising under the FDCPA and FTCA must be denied.

Defendants argue that the targeted check writers in this matter were criminals and the FDCPA does not apply to criminal acts. Defendant primarily relies on Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3d Cir. 1987), a case involving cable

signal piracy and a demand letter sent to suspected violators by HBO Affiliate Group for a $300.00 settlement.  The Third Circuit held that the FDCPA did not apply to attempts to collect money from persons who allegedly had committed cable television theft. Zimmerman, 834 F.2d at 1167-68.  The Zimmerman court indicated that the FDCPA was intended to protect those who have "contracted for goods or services and [are] unable to pay for them," and that the statute was not intended to "protect against a perceived problem with the use of abusive practices in collecting tort settlements from alleged tortfeasors through threats of legal action." (Id. at 1168).  Thus, the Third Circuit held that there clearly was no debt at issue in Zimmerman because the obligations arose out of theft rather than a "transaction." (Id.)

The Zimmerman court also stated that a transaction must involve the "offer or extension of credit" to be covered by the FDCPA. (Id.)  However, in Pollice v. National Tax Funding, 225 F.3d 370 (3d Cir. 2000), the Third Circuit made clear that the statement regarding the offer or extension of credit was not necessary to the ultimate decision in Zimmerman.  Indeed, the Pollice court held that this statement from Zimmerman has been widely disavowed by several other courts of appeals, which have taken the broader view that the FDCPA applies to all obligations to pay money which arise out of consensual consumer transactions, regardless of whether credit has been offered or extended.

-18-

Pollice, 225 F.3d at 401.  The Pollice court held that the statement in Zimmerman was dictum and concluded upon a re-examination of the issue that no offer or extension of credit is required for a debt to be created.  (Id.)  As this is currently the controlling law within this Circuit, Zimmerman does not support the proposition that the consumers in this case are criminals precluded from the protection of the FDCPA.

Specifically, defendants argue that the targeted check writers are thieves analogous to those who committed cable piracy in Zimmerman.  Defendants, however, cannot simply assume that every check writer from whom they seek to collect a debt intended to commit a crime or is similar to persons found liable for shoplifting or cable piracy.  When a person shoplifts or steals cable services, the debt incurred by such person can clearly only be attributed to a criminal act.  Check writers, however, may not even know that they had insufficient funds in their accounts at the time of the consumer transaction.  Thus, the debts incurred by the check writers may or may not be attributable to criminal acts.  Furthermore, whether the check writers engaged in criminal conduct is not a determination for defendants to make.  NCC may only attempt to collect payments on checks purchased at a discount.  NCC's officers, agents and employees have no authority to determine whether the check writers are criminal and then employ law enforcement tactics to collect the payments.

-19-

This Court's previous Opinion stated that defendants "do not have any stature to make the determination that the check writers they contact have committed a crime.  Defendants cannot simply declare the check writers to be criminals and except themselves from the constraints of the FDCPA and the FTCA."  <u>Check Investors</u>, Civil Action No. 03-2115, slip op. at 16 (D.N.J. July 29, 2003) (denying defendants' motion to dismiss).  Defendants continue to fail to provide evidence to demonstrate that any consumer from whom they collected payment was convicted of a crime for issuing a dishonored check or was found to be a tortfeasor by a court of competent jurisdiction in a civil case.

As a retort, defendants argue that the FTC carries the burden to prove that the targeted check writers were not criminals.  (Hutchins Opp. at 7).  In further support of this assertion defendants argue that the use of the word "consumer" is fatal to Counts Six and Seven of the FTC's Complaint, which allege that defendants' deceptive collection practices violated the FTCA.  Defendants cite no law supporting their assertion that the FTC carries the burden to prove that the check writers at issue were not criminals, nor do defendants provide facts sufficient to demonstrate that they were.  Therefore, defendants' argument that the FTC must prove that the check writers from whom they collected payment were consumers, not criminals, is without basis in law or fact.

-20-

B.  Defendants Violated Section 805 of the FDCPA

Defendants have not rebutted evidence that they engaged in prohibited communications with third parties in violation of Section 805 of the FDCPA.  The FTC has provided evidence that defendants harassed third parties, including children and parents, to obtain payments for consumers' alleged debts.  (FTC's Statement of Material Facts, ¶¶ 34-38).  Furthermore, the record indicates that defendants left messages on home answering machines, which were overheard by family members and other third parties, to obtain payments from alleged indebted consumers. (Id.)  Thus, defendants have failed to place material issues of fact upon the record to contradict that they engaged in prohibited communications with third parties in violation of Section 805 of the FDCPA.

C.  Defendants Violated Section 806 of the FDCPA

Defendants have presented no evidence that they did not engage in harassment, oppression and abuse of consumers in violation of Section 806 of the FDCPA.  The record demonstrates that defendants used intimidating, demeaning and insulting language towards consumers in attempting to secure payment of purported debts.  (Id., ¶¶ 39-42).  Because this evidence is unrefuted, there is no issue of material fact precluding a ruling that defendants violated Section 806 of the FDCPA.

D.  Defendants Violated Section 807 of the FDCPA

-21-

The FTC has demonstrated that defendants made various false, deceptive and misleading representations in order to collect alleged debts from consumers in violation of Section 807 of the FDCPA.  In dunning letters, defendants represented to consumers that their alleged debts were greater than the debt owed, adding $125.00 or $130.00 over the value of a consumer's alleged NSF check.  (Id., ¶¶ 71-73).  Defendants also sent out a mass mailing of collection letters that falsely indicated that the correspondence was from an attorney, in violation of Section 807(10) of the FDCPA.  (Id., ¶¶ 46-51).  Furthermore, after making threats of arrest and seizure of property or wages in violation of Section 807(4) of the FDCPA, Hutchins' answers to interrogatories and deposition admit that defendants neither filed civil or criminal complaints with law enforcement agencies nor levied upon a consumer's wages or property.  Moreover, defendants violated Section 807(5) of the FDCPA by making false threats to file civil and criminal law suits.  For example, regarding civil actions, in some states a foreign corporation not registered to do business in the state is prohibited from bringing suit in the courts of that state.  Defendants were not registered in each state where they threatened civil action.  As to criminal prosecutions, defendants often made such threats in jurisdictions where such prosecution would already be barred by applicable statutes of limitations.  Lastly, defendants regularly

-22-

claimed that a criminal proceeding against a consumer was imminent unless immediate payment was completed, in violation of Section 807(7). (<u>Id</u>., ¶¶ 68-70). Accordingly, the FTC has established that defendants made various false, deceptive and misleading representations in order to collect alleged debts from consumers in violation of Section 807 of the FDCPA.

E.  Defendants Violated Section 808 of the FDCPA

The FTC has demonstrated that defendants regularly collected amounts beyond the amount permitted by law given the face value of consumers' alleged NSF checks. (<u>Id</u>., ¶¶ 71-73). Defendants have not contradicted this evidence, which violates Section 808 of the FDCPA. Hence, there are no material issues of fact in dispute as to whether defendants collected amounts not permitted by law.

F.  Defendants Violated Section 809 of the FDCPA

Defendants admit that no FDCPA notices were sent with collection letters. Such a failure violates Section 809 of the FDCPA including the obligation to corroborate debts. (<u>See</u> <u>id</u>., ¶ 75).

G.  Defendants Violated Section 5 of the FTCA

The FTC's evidence provides various material misrepresentations, made by defendants, to intimidate consumers into paying debts upon which defendants demanded payment. (<u>Id</u>., ¶¶ 43-73). Defendants have not offered evidence challenging the

-23-

FTC's record that they made express and false misrepresentations in violation of Section 5 of the FTCA. Accordingly, there are no material issues of fact before the Court as to whether defendants violated Section 5 of the FTCA.

## III.  The FTC's Proposed Injunction and Monetary Relief

The FTC has established its entitlement to summary judgment against the defendants for numerous statutory violations. In doing so, the FTC has also established the right to the relief which it seeks. The FTC is entitled to both the injunctive and monetary relief which it requests. As to the latter, the FTC has established that $10,204,445.00 in payments were procured by the defendants using the improper purposes addressed in this Opinion. (FTC's Statement of Material Facts, ¶¶ 76, 77). For the reasons discussed in the FTC's Memorandum in Support of its summary judgment motion, this sum is recoverable from the defendants, jointly and severally, as restitution in this matter. (See Plaintiff's Br. at 28-30).

### CONCLUSION

For the foregoing reasons, the Court grants the FTC's motion for summary judgment and denies defendants' motion for summary judgment. The Court has adapted the FTC's proposed Final Order for Judgment and Permanent Injunction as to Defendants Check

-24-

Investors, Inc., Check Enforcement, Inc., Jaredco, Inc., Barry

Sussman and Charles Hutchins, a copy of which is enclosed.


                                        /s/  John W. Bissell
                                            JOHN W. BISSELL
                                              Chief Judge
                                    United States District Court



DATED:  July 15, 2005